# THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ] | |
| ] | |
| VS ] | CASE NO. 3:21-cr-00013 |
| ] | JUDGE CAMPBELL |
| CHARLES MALLORY. ] | |

### DEFENDANT CHARLES MALLORY'S SENTENCING MEMORANDUM

Undersigned counsel, David M. Hopkins, on behalf of the Defendant, Charles Mallory, and pursuant to U.S.S.G. § 6A1.2-3, p.s., Fed. R. Crim. P. 32 (d), (e)(2) and (f), and Local Rule 32.01(e), respectfully files this Sentencing Memorandum. The sentencing hearing is scheduled for Monday, September 20, 2021, at 1:30 p.m. (Doc No. 32). Mr. Mallory has notified the Court and parties that he has no objections to the Presentence Report (PSR) prepared in this case. (Doc. No. 34).

### Preliminary Considerations, Case History and Guidelines Calculations

Mr. Mallory made his initial appearance on the information in this case on March 15, 2021. (Doc. No. 22). Mr. Mallory was originally arrested and charged for the offense conduct on a complaint while in the custody of the State of Tennessee, where he was being held on an unrelated charge. (Complaint, Doc. No. 3; PSR pgs. 9,15).

Mr. Mallory is charged in the information as follows: Count 1: Bank Robbery, in violation of Title 18, United States Code, Section 2113(a); Counts 2-6: Hobbs Act Robbery, in violation of Title 18, United States Code, Section 1951 and 924(c)(1)(A); and Count 7: Possession of a firearm in furtherance of a crime of violence, in violation of Title 18, United States Code, Section 924(c)(1)(A). (Information, Doc. No. 20).

On May 10, 2021, Mr. Mallory pled guilty as charged in the information pursuant to a binding plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C), whereby the parties jointly recommend a sentence of 120 months of incarceration. (Doc. Nos. 29.30). Mr. Mallory's guideline range as a Range II offender with a total offense level of 28 is 87-108 months for counts one through six, and 60 months consecutive for count seven. (PSR. p. 24). LR 32.01(e) requires that "counsel must file a statement identifying any relevant factors that may be applicable at sentencing pursuant to 18 U.S.C. § 3553(a)." Additionally, Courts remain bound to consider the guidelines and all of the sentencing factors of 18 USC § 3553(a) and (b) and impose a sentence, which is "reasonable" and not "greater than necessary."

In determining whether a variance is warranted for counts one through six to 60 months, 27 months below the advisory sentencing guideline range, the Court must consider all the factors set forth in 18 U.S.C. § 3553(a) as a whole. *Gall v. United States*, 552 U.S. 38 (2007); *United States v. Stone*, 432F.3d 651, 655 (6th Cir. 2005). Mr. Mallory respectfully submits that a total sentence of 120 months, below the anticipated court determined guidelines, would be appropriate in light of the sentencing factors that must be considered by the Court.

## SENTENCING GUIDELINES CONSIDERATIONS

Counsel has reviewed the PSR with Mr. Mallory, and has filed a Position with the Court stating there are no objections. (Doc. No. 48). Mr. Mallory' guideline range for counts one through six is just the starting point for calculating a potential sentence, and is not mandatory. *Booker v. United States*, 543 US 220 (2005). The question for this Court is whether applicable 18 U.S.C. § 3553(a) factors warrant a variance from the

advisory guidelines, and if so, to what extent? Mr. Mallory respectfully submits that a sentence of 120 months is sufficient, but not greater than necessary, based upon all the sentencing factors the Court will consider and those identified herein

**Assessment of §3553(a) Factors to Determine a Sufficient Sentence that is No Greater Than Necessary to Achieve the Purposes of Sentencing**

**1. The Nature and Circumstances of the Offense and The History and Characteristics of the Defendant.**

The Offense:

The PSR and Plea Agreement (Doc. No. 31) set out the relevant facts of this case and those will not be repeated here in their entirety. In short, Mr. Mallory committed a series of robberies between November of 2019 and May of 2020 of convenience stores and a bank, and possessed a firearm in furtherance of a crime of violence.

Defendant's History and Characteristics[1]:

Mr. Mallory is 29 years old, and was born in Nashville, Tennessee, to his parents, Kenneth Paul Mallory, Jr. and Jenny Mallory. Mr. Mallory was the middle of five children, with two older sisters and two younger twin brothers. Mr. Mallory's father abused cocaine and alcohol, eventually dying from cirrhosis of the liver in 2016. Mr. Mallory's mother, now in recovery, was addicted to crack cocaine and opioids for the majority of his childhood, which was the likely cause of her frequent incarceration while he was a child. When Mr. Mallory was seven years old, his mother overdosed, resulting in the Tennessee Department of Children's Services (DCS) becoming involved with his family. Mr. Mallory's two younger brothers were removed from his parents' custody and

---

[1] Factual information contained in this section are found with the PSR submitted in this case, unless otherwise noted.

eventually adopted by another family. Mr. Mallory has had no contact with his younger brothers since they were removed from the home by DCS. Mr. Mallory's parents divorced when he was seven and he went to live with his father and paternal grandmother in public housing. Two years later, Mr. Mallory's parents reconciled and resumed cohabitation, but did not remarry.

Given his parent's addictions, it is not surprising Mr. Mallory's childhood was one marked by poverty and abuse. His parents struggled financially, as one would expect from persons trying to pay for their addictions. As a child, Mr. Mallory witnessed his father physically abuse his mother, who also abused Mr. Mallory. One incident of abuse resulted in Mr. Mallory having to get stiches over his right eye. At age 10, Mr. Mallory began receiving mental health treatment after he was expelled from school for threatening another student with scissors. His mental treatment was inpatient initially, and then Mr. Mallory had approximately five years of outpatient treatment. Mr. Mallory continued on medications for PTSD, depression, anxiety and ADHD until he graduated from high school, where he earned a cumulative 1.2667 grade point average on a 4.0 scale. While in school, Mr. Mallory received an Individual Education Program because of his diagnoses of health impairments and emotional disturbance. Mr. Mallory's sister reports that their father did not follow up on mental health treatment for Mr. Mallory as recommended, and attributes Mr. Mallory's mental health issues to his parents' domestic violence and drug abuse present throughout his childhood.

At age 18, Mr. Mallory was shot in the head during an apparent firearm accident. While the physical trauma was minimal, Mr. Mallory's sister believed that this incident "messed him up" and Mr. Mallory reports memory issues following the injury, as well as

4

continuing anxiety and depression after the shooting. Both Mr. Mallory and his sister believe mental health counseling and medication would benefit him.

Mr. Mallory began using marijuana at age 13, alcohol at age 15, powder cocaine at age 17, Lortab at age 18, crack cocaine at age 21, and heroin at age 27. He attended an inpatient drug treatment program in 2014, after which his sister reports he did well. However, following his father's death, Mr. Mallory relapsed, perhaps due to guilt over their poor relationship that existed at the time he died. She describes Mr. Mallory as someone who "stopped caring" after his father died. Mr. Mallory tried drug treatment again in February of 2020, but left after 30 days when the Suboxone being used to taper him off of opioids was abruptly discontinued. Both Mr. Mallory and his sister believe drug addiction treatment would be beneficial for him.

Despite his educational limitations and drug and alcohol addictions, Mr. Mallory does have some employment history. Most notably, Mr. Mallory worked as a commercial cable installer from 2012 to 2016, leaving this employment around the time his father died. Mr. Mallory's employment after 2016 was sporadic and of short duration.

Mr. Mallory's prior adult criminal history, which began at age 23, is minimal with only three misdemeanor convictions. (PSR, pgs. 14-15). However, Mr. Mallory accepts responsibility for his past mistakes as he has done in this case by entering guilty pleas. All behavior, however, must be looked at in context. Mr. Mallory committed a number of serious crimes in a short amount of time, following the beginning of his use of heroin after his father died, which appears to have been the tipping point in his life. Given Mr. Mallory's impoverished childhood marked by domestic violence and parental drug

5

abuse, his own addictions and mental health struggles, it is arguable his prior criminal history could be much worse. Again, Mr. Mallory is not making excuses for the behavior which he has admitted was wrong, nor is he not accepting responsibility for his crimes, which he has and does.

Mr. Mallory plans to request vocational training during his incarceration, which will further improve his chances for a successful transition into society. His time in pretrial detention has given him time to reflect on his past mistakes. Mr. Mallory looks forward to rehabilitation opportunities in the Bureau of Prisons that he has not had the opportunity to participate in during his pretrial confinement. With the anticipated mental health and drug treatment and vocational training Mr. Mallory will seek while incarcerated, he hopes to be self-sufficient, drug-free and a positive influence on the community upon his release.

2. **The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Address Retribution, Rehabilitation, Deterrence and Incapacitation**

In addition to those factors found in 18 USC §3553(a)(1), 18 USC §3553(a)(2) factors must be considered by the Court, which include fashioning a sentence which reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords deterrence, protects the public from further crimes by the defendant and provides rehabilitation.

Mr. Mallory's offense in this case consisted of robberies and possession of a firearm during a violent felony. The Court's concern for protecting the public from further crimes by Mr. Mallory is therefore understandable and one that must be given consideration. This question of public protection warrants a review of the United States

Sentencing Commission studies on recidivism.  For example, their March 2016 study shows that offenders sentenced to between 60 and 119 months were rearrested at a higher rate after release from custody than those sentenced to between six and 59 months.  Offenders sentenced to 120 months or more were rearrested less than four percent more often than those sentenced to between 60 and 119 months.  (U.S Sentencing Commission: *Recidivism Among Federal Offenders: A Comprehensive Overview*[2] (2016), p.43.)  It can be concluded that lengthier sentences do not always result in significantly more protection of the pubic in regards to new crimes being committed by an offender after release.  Further, Mr. Mallory will be well into his 30's upon release if a 120 months sentence is imposed in this case.  A December 2017 study by the Sentencing Commission has found in its key findings that the "reincarceration rate was highest among those between the ages of 21 to 24 years old (38.6%) and declined in each subsequent age group." (U.S. Sentencing Commission: *The Effects of Aging on Recidivism Among Federal Offenders*[3], p.23)

      The primary question the Court must answer is whether a sentence below the sentencing guideline range in the PSR would still be sufficient but not greater than necessary to achieve the goals of sentencing.  This question requires an analysis of the answers to other questions that must be asked by the Court.  In context of the sentencing factors the Court must consider, and in light of the statutory minimum guideline sentence in this case, would it be unreasonable for the Court to impose a sentence of 120 months and would such a sentence still deter others from similar

---

[2] https://www.ussc.gov/research/research-reports/recidivism-among-federal-offenders-comprehensive-overview
[3] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf#page=9

behavior and promote respect for the law? Also, would a sentence that would result in Mr. Mallory being well into his 30's prior to his release result in him being at less risk of reoffending and harming others in the future? Additionally, would a sentence of 120 months, 27 months below the advisory Guidelines range, still allow Mr. Mallory the opportunity to obtain vocational training and drug and mental health treatment while incarcerated, and ensure that upon his release, he has the tools to deal with his addiction issues as well as leave him the years needed to have become a positive influence on society? Mr. Mallory submits that the answer to these questions is yes.

### 3. The Kinds of Sentences Available

Since Mr. Mallory's guideline range being in Zone D of the Sentencing Table, the Sentencing Guidelines state that he is ineligible for probation. See, U.S.S.G. § 5C1.1 (f).

### 4. The Sentencing Range Established for the Applicable Category of Offense Committed by the Applicable Category of Defendant as Set Forth in the Guidelines.

Mr. Mallory's guideline range, with acceptance of responsibility pursuant to U.S.S.G. 3E1.1(a) and (b), results in a final offense level of 28 and, with a criminal history of II, a term of imprisonment of 87-108 months for counts one through six, and 60 months consecutive for count seven. (PSR p. 24).

### 5. Any Pertinent Policy Statement

Mr. Mallory is not aware of any policy statement that would impact his sentencing in this case.

8
Case 3:21-cr-00013    Document 35    Filed 09/10/21    Page 8 of 10 PageID #: 82

## 6. The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct.

While disparity among codefendants is a relevant consideration for the Court, there are none in this case. *See*, *United States v. Conatser*, 514 F.3d 508, 522 (6th Cir. 2008). Regarding national comparisons, a 2021 study by the United States Sentencing Commission found that for the fiscal year 2020, the mean months imposes for robbery convictions was 105 months and the median months imposed was 87. The mean and median months imposed for firearms convictions was 48 and 37, respectively. (U.S. Sentencing Commission: *Final FY20 Quarterly Sentencing Date Report*[4], published April 20, 2021, p.9).

## 7. The Need to Provide Restitution to any Victims of the Offense.

Restitution is recommended in the PSR and Mr. Mallory does not object to this recommendation nor that it be paid to the parties listed therein as victims. (PSR pgs. 24-26).

## CONCLUSION

Based upon the foregoing, Mr. Mallory respectfully requests the Court to sentence him to the agreed upon term of imprisonment of 120 months. When considering Mr. Mallory in light of all of the sentencing factors the Court is required to consider, Mr. Mallory submits this variance below the advisory guideline range is warranted in this case. Mr. Mallory' abusive childhood environment, mental health and addiction struggles, as well as his minimal criminal history and limited periods of prior

---

[4] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/quarterly-sentencing-updates/USSC-2020_Quarterly_Report_Final.pdf

incarceration, support the PSR's justification that a sentence of 120 months' custody is sufficient to meet the sentencing goals of punishment and deterrence. (PSR, p. 26).

Finally, Mr. Mallory requests that the Court recommend to the Bureau of Prisons that he be given drug treatment, preferably RDAP if available, mental health treatment, and vocational training to include HVAC. Finally, Mr. Mallory would request that his sentence be served at a location as close to Nashville, Tennessee, as possible, so that he can maintain his relationship with his family while incarcerated.

Respectfully submitted,

/s/ *David M. Hopkins*
David M. Hopkins (TNBPR#020134)
Attorney for Charles Mallory
745 S Church Street, Bldg. A-130
Murfreesboro, TN 37130
615-852-8228
attydavidhopkins@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2021, I electronically filed the foregoing *Sentencing Memorandum* with the U.S. District Court Clerk by using the CM/ECF system, which will give notice to Dwight Artis, Assistant United States Attorney, 110 Ninth Avenue South, Suite A961, Nashville, Tennessee 37203, and all parties, who may access this document via the CM.ECF system.

/s/ *David M. Hopkins*
David M. Hopkins